**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

**TINA BROOKS,**

    **Plaintiff,**

**v.**                                                                          **Case No. 8:06-cv-1815-T-TBM**

**MICHAEL J. ASTRUE,**[1]
**Commissioner of the United States
Social Security Administration,**

    **Defendant.**
                                         /

**O R D E R**

The Plaintiff seeks judicial review of the denial of her claim for Social Security disability benefits. For the reasons set out herein, the decision is affirmed.

I.

Plaintiff was forty-five years of age at the time of her administrative hearing in September 2004. Plaintiff has a high school education plus two years of college course work in music and communications. Her past relevant work was as a short order cook, blow mold assistant, and mattress assembler. She also performed a variety of jobs while working for a temporary agency. Plaintiff applied for disability benefits in May 2002, alleging disability as

---

[1]Michael J. Astrue became Commissioner of Social Security on February 12, 2007. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue should be substituted for Commissioner Jo Anne B. Barnhart as Defendant in this suit.

of August 1, 2001, by reason of neuropathy, reflex sympathetic dystrophy, depression and neuralgia.  The Plaintiff's application was denied originally and on reconsideration.

The Plaintiff, at her request, then received a *de novo* hearing before an Administrative Law Judge ("ALJ").  The Plaintiff was represented at the hearing by counsel and testified in her own behalf.  Additionally, a vocational expert was called by the ALJ.

In essence, Plaintiff testified that she was unable to work at any job due to an injury to her left hand and arm and because of neuropathy in her feet.  According to Plaintiff, she injured her left hand, has nerve damage and limited use of the hand.  The neuropathy in her feet affects her walking and ability to stand for any length of time.  She takes Neurontin and Elavil for her conditions.  The Elavil appears to help her sleep.  However, she indicates that her medications make her dizzy, drowsy, and have dry mouth.

Plaintiff cares for her grandfather on a daily basis.  She cooks a meal, tries to do some laundry, and if she feels good she may walk a half mile or so to her mother's house for a visit.  She is unable to play ball and do activities with her nephews and nieces.  She watches television and attends church but has difficulty sitting through the whole two-hour service.

Plaintiff estimated that she could stand for only about ten minutes.  She can walk for about a half mile but has to stop and rest along the way.  She uses a cane to assist with balancing and walking.  At the hearing, after sitting for fifteen to twenty minutes, she indicated that her feet had gone numb.  Because of the injury to her left hand, she has difficulty picking up small objects; she uses her right hand to lift things.

Plaintiff testified that she could not return to her past work because of the amount of standing required at each of those jobs and because of the limited use of her left arm and

hand.  She does not believe she could do a sit down job on a full-time basis and made reference to recent nerve damage in her spine.  *See* Plaintiff's testimony (R. 258-76).

Next, the ALJ took testimony from Teresa Manning, a vocational expert ("VE").  She identified Plaintiff's past work as either light or medium exertional work that was semi-skilled or unskilled in nature.  On an assumption of an individual of Plaintiff's age and education with the ability to perform light exertional work with occasional climbing, balancing, stooping, crouching, kneeling, or crawling, the VE opined the individual could do assembly jobs, as well as machine operator and short-order cook work.  Assuming an individual capable of lifting, carrying, pushing, and pulling ten pounds on occasion and five pounds frequently, performing occasional climbing of stairs, balancing, stooping, crouching, kneeling, and crawling; and using the right hand with the left hand as a helper, and with a need for a cane to ambulate and an inability to climb ladders and work around dangerous moving machinery or unprotected heights, the VE opined that such individual could not do Plaintiff's past work but could work as a security monitor, information clerk, and ticket checker.  Even if such individual required a sit/stand option, such work would be available.  If, secondary to all these limitations, the individual would miss two days of work a week, the VE opined that such individual could not work at a competitive level.  The VE further noted that the job of security monitor, information clerk, and ticket taker all might require handling of pens and picking up paper or a telephone.  *See* VE's testimony (R. 276-81).

Also before the ALJ were medical records outlining the Plaintiff's medical history.  These matters are addressed adequately by the parties' memoranda and are set forth herein as necessary.

By her decision of July 16, 2005, the ALJ determined that while Plaintiff has severe impairments related to peripheral neuropathy of the lower extremities, history of reflex sympathetic dystrophy, and mild degenerative joint disease, Plaintiff nonetheless had the residual functional capacity to perform a limited range of sedentary exertional work. Upon this finding and the testimony of the VE, the ALJ concluded that Plaintiff could perform jobs available to her in the local and national economy. Upon this conclusion, the Plaintiff was determined to be not disabled. (R. 14-23). The Appeals Council denied Plaintiff's request for review.

## II.

In order to be entitled to Social Security disability benefits, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment," under the terms of the Act, is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* at § 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See id.* at § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d

1397, 1400 (11th Cir. 1996). The Commissioner must apply the correct law and demonstrate that he has done so. While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. *Celebrezze v. O'Brient*, 323 F.2d 989 (5th Cir. 1963). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence, but is limited to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. *Miles*, 84 F.3d at 1400; *Bloodsworth v. Heckler*, 703 F.2d 1233 (11th Cir. 1983).

The scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988); *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983).

III.

The Plaintiff raises four claims on this appeal.  As stated by the Plaintiff, they are as follows:

(1) Whether the ALJ erred in not considering Ms. Brooks' side effects from her medication;

(2) Whether the ALJ erred in failing to consider to the claimant's mental impairment to be severe; and

(3) Whether the ALJ erred in failing to completely evaluate the claimant's testimony and give adequate reasons for accepting or rejecting the claimant's testimony; and

(4) The tape of the hearing is inaudible in pertinent sections.

Addressing her fourth claim first, Plaintiff is correct that the hearing transcript reflects that portions of her testimony were "inaudible."  In particular, she complains that testimony related to her fatigue and the side effects of her medication is not revealed. However, on close inspection, Plaintiff fails to demonstrate sufficient error or prejudice to warrant a remand on this basis.  As for the alleged side effects of her medication, the substance of her testimony appears to be fairly set forth.  Thus, the transcript reveals the following,

> A.  . . . but it's depending on when I take my medication.  Because some of it (inaudible) me out.
>
> Q.  You were talking about some of the side effects.  What side effects do you experience on your medication?
>
> A.  Dizziness, drowsy, no operate no machinery, and they have upped the dosage of my medication, especially my Neurontin.  Dry mouth right now, need some water.

(R.270-71). Additionally, Plaintiff indicated her medicines generally helped some, but made her sleepy. She indicated further that would not drive on a bad day when she takes her medication. (R.271-75). As for her fatigue, Plaintiff's testimony can be read to reflect general complaints that she fatigues during activity and cannot do as much as she used to be able to do  The particular section of the transcript complained of does reveal somewhat unclear testimony that the ALJ appears to have interpreted in his decision. *See* (R.274, 19). However, Plaintiff does not complain of the ALJ's interpretation of the testimony or show significant prejudice to any inaudible portion. When the section is fully read, Plaintiff clearly claimed that her Elavil made her sleepy, but as she noted, she had advised her doctors of this. In any event, Plaintiff had been taking the medication since 1995 and indicated she could not do without it. *Id*. As the transcript also reflects, Plaintiff's counsel was given a full and fair opportunity to discuss the matter further, but elected not to. Thus, on this claim, Plaintiff demonstrates no significant prejudice and a remand is unwarranted..

By her first claim, Plaintiff complains that the ALJ failed to directly address her testimony regarding the side effects of her medication. While conceding that the complaints were implicitly rejected, she urges that the ALJ must make a particularized finding in this regard and failed to do so. Unquestionably, an ALJ has a duty to investigate the possible side effects of medication taken by a claimant. *See Cowart v. Schweiker*, 662 F.2d 731, 737 (11th Cir. 1981). Here, the record reveals that the ALJ complied with this duty. As set forth above, the transcript from the hearing reveals that the ALJ expressly questioned Plaintiff about the side effects of her medication. Further, the decision reflects that the testimony was expressly considered by the ALJ. (R.19). While, the decision does not contain a specific finding on

these side effects, as Plaintiff concedes, these complaints were implicitly discounted by the ALJ.  When considered as a whole, the decision more than adequately reflects that these side effects, along with the totality of Plaintiff's subjective complaints, were discounted on the basis of a thorough review of Plaintiff's medical record and the findings and opinions of her doctors.  See (R.16-20).  My independent review of the medical record reveals that Plaintiff rarely made any complaints to her doctors concerning the side effects of her medication or that such side effects were deemed significant to any of her treating doctors.  *See e.g.* (R.186).  Further, Plaintiff herself conceded that she had used Elavil since 1995, and while it made her sleepy, she had worked for a number of years while taking this medication.  While Neurontin was prescribed for her neuropathy and may have caused her dizziness, the condition was deemed to be non-disabling by one of Plaintiff's treating physician.  *See* (R.208).  In this circuit, when there is little or no evidence that a claimant is taking medications that cause side effects, the ALJ is not required to elicit testimony or make findings regarding the effect of medications on the claimant.  *Passopulos v. Sullivan*, 976 F.2d 642, 648 (11th Cir. 1992); *see Swindle v. Sullivan*, 914 F.2d 222, 226 (11th Cir. 1990) (holding an ALJ's determination on side effects was supported by substantial evidence where the claimant did not complain about side effects and the record did not disclose any concerns about side effects by the doctors examining claimant).  In my view, a fair reading of the decision reflects the ALJ's clear, albeit implicit, findings on Plaintiff's claimed side effects.  A remand in these circumstances would serve no useful purpose.

By her second claim, Plaintiff maintains that the ALJ erred at step two of the evaluation process in finding Plaintiff's mental condition to be a non-severe impairment.

Here, Plaintiff cites to the opinion of Dr. Mussenden, an examining psychologist, who found Plaintiff suffered from depression and experienced difficulty in focusing and concentrating in the work setting. While the doctor found her mental condition was not debilitating, he opined that Plaintiff might not have the drive and motivation needed to be more functional and productive. Thus, Plaintiff urges that, in Dr. Mussenden's opinion, her depression effected her concentration and general attention and the ALJ erred in not determining the effect of such on her ability to work.

At step two of the five-step evaluation process prescribed by the regulations, the ALJ is called upon to determine whether a claimant's impairments are severe. 20 C.F.R. § 404.1520(c). Under this regulation, if the claimant does not have an impairment or combination of impairments which significantly limits her ability to do basic work activities, then she is not disabled.[2] In application, this inquiry is a "threshold" inquiry. It allows only claims based on the slightest abnormality to be rejected. *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984).

Initially, insofar as Plaintiff claims the ALJ erred at step two, the claim is without merit. The finding of any severe impairment, whether or not it qualifies as a disability and whether or not it results from a single severe impairment or a combination of impairments

---

[2]The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." *Bowen v. Yuckert*, 482 U.S. 137, 142 (1987) (citing 20 C.F.R. §§ 404.1521(b)(b)). Basic work activities include physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, and handling, as well as capacities for seeing, hearing, and speaking; understanding, remembering and carrying out simple instructions; responding appropriately to supervisors and fellow employees and dealing with changes in the work setting; and the use of judgment. *Id.*

that together qualify as severe, is enough to satisfy the requirement at step two. *See Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987). Here, the ALJ found Plaintiff suffered several severe impairments at this step of the evaluation and then appropriately moved to step three. Insofar as Plaintiff complains that the ALJ failed to go further and evaluate how her mental condition impaired her functioning, the decision reflects otherwise and this claim ultimately fails because Plaintiff cannot demonstrate any significant functional limitations not considered by the ALJ. When Dr. Mussenden's report is considered in full, he concluded that Plaintiff did not suffer a debilitating condition and was only mildly affected by her mental state. When the balance of the mental health record (or lack of it) is considered, the ALJ could properly conclude that Plaintiff had no significant mental health history or treatment history suggesting any significant mental functional limitations. On the whole, the ALJ was not required to do more than she did in this case on this record.

Finally, Plaintiff complains that the ALJ erred in rejecting her subjective complaints on the basis that no doctor had imposed restrictions. On the contrary, Plaintiff urges that a doctor had prescribed her a cane and medical records revealing neuropathy and RSD support her complaints of pain in the left arm and legs such that it is not enough to discredit her that no doctor imposed any restrictions. Plaintiff also maintains that the medical record supports her complaints of pain and fatigue and there was no substantial basis for rejecting such subjective testimony.

Where an ALJ decides not to credit a claimant's testimony about [pain], the ALJ must articulate specific and adequate reasons for doing so or the record must be obvious as to the credibility finding. *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995); *Jones v. Dep't*

*of Health & Human Servs.,* 941 F.2d 1529, 1532 (11th Cir. 1991).  A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record.  *Hale v. Bowen*, 831 F.2d 1007, 1012 (11th Cir. 1987).  The lack of a sufficiently explicit credibility finding may give grounds for a remand if the credibility is critical to the outcome of the case.  *Smallwood v. Schweiker,* 681 F.2d 1349, 1352 (11th Cir. 1982).  Thus, where credibility is a determinative factor, the ALJ must explicitly discredit the testimony or the implication must be so clear as to amount to a specific credibility finding.  *Foote*, 67 F.3d at 1562.

Here, the decision reflects the ALJ's recognition of the applicable standard.  (R.18).  Furthermore, the decision reflects that in applying that standard, the ALJ credited much of Plaintiff' subjective testimony, but not to the extent that she was disabled from all work.  (R.18-19).  With all due respect to Plaintiff, her claim does not give the decision a fair reading in terms of the reasons cited by the ALJ for discounting her subjective complaints.  At its core, the rationale for the ALJ's conclusion was the lack of medical support for her claims.  A review of the medical record supports the ALJ's conclusions in this regard.  As noted, even her own treating physician opined that she was not disabled.  The multiple findings by the ALJ (R. 18-20) are more than adequate reasons to support the credibility conclusion.  *See Allen v. Sullivan*, 880 F.2d 1200, 1203 (11th Cir. 1989).

IV.

For the foregoing reasons, the decision of the Commissioner of the United States Social Security Administration is in accordance with the correct legal standards and is

otherwise supported by substantial evidence.  The decision is affirmed.  Accordingly, the Clerk is directed to enter Judgment in favor of the Defendant and to close the case.

**Done and Ordered** at Tampa, Florida, this 7th day of December 2007.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of record